UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| KAREN SUE BENTLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | No. 7:24-CV-16-HAI<br><br>**MEMORANDUM OPINION & ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Karen Sue Bentley seeks review of the Social Security Administration's ("the SSA") denial of her request for disability benefits beginning on January 16, 2020. D.E. 12 at 21. Plaintiff initially filed a Title II application for disability and disability insurance on March 30, 2021. *Id.* Administrative Law Judge Christopher Sheppard ("the ALJ") denied her application on February 10, 2023. *Id.* at 37. After exhausting her administrative remedies, Plaintiff sought judicial review of the denial on February 13, 2024. D.E. 1. The Commissioner filed an answer on April 15, 2024. D.E. 12. Plaintiff filed her opening brief on June 14, 2024. D.E. 15. The Commissioner filed a responsive brief on July 11, 2024, to which Plaintiff declined to reply on July 26, 2024. D.E. 17; D.E. 18. Thus, the matter is ripe for adjudication.

The Court has jurisdiction to hear Plaintiff's challenge under 42 U.S.C. § 405(g). Both parties consented to the referral of this matter to a magistrate judge. D.E. 6. This matter was initially referred to Magistrate Judge Edward B. Atkins, but was reassigned under 28 U.S.C. § 455 to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 5; D.E. 8. The Court,

having reviewed the record and for the reasons stated herein, **DENIES** Bentley's request for remand (D.E. 1).

I.

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim. The ALJ followed these procedures in this case. *See* D.E. 12 at 21-37.[1]

At the first step, the ALJ must determine whether the claimant is currently engaged in a substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ found Plaintiff had not been engaged in a substantial gainful activity since the alleged onset of her disability, January 16, 2020. D.E. 12 at 23.

At the second step, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the [Social Security Act's] duration requirement . . . or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found that Plaintiff had the following severe impairments: Type II diabetes mellitus, gouty arthritis, chronic obstructive pulmonary disease (COPD), intellectual disability, and persistent depressive disorder. D.E. 12 at 23.

At the third step, the ALJ must determine whether the claimant's impairments meet or equal an impairment listed in 20 C.F.R. 404 Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, the claimant is found to be disabled. *Id.* Here, the ALJ found Plaintiff to have no such impairment. D.E. 12 at 24.

When a claimant is not found disabled at the third step, the ALJ proceeds to the fourth step. At the fourth step, the ALJ must determine the claimant's past relevant work history and Residual Functional Capacity ("RFC"), or her ability to do physical and mental work activities on a

---

[1] Pinpoint citations herein are to the blue page numbers generated by CM/ECF.

sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined Plaintiff had:

> the residual functional capacity to perform medium work as defined in 20 CFR [§] 404.1567(c) except the claimant could lift and carry up to 50 pounds occasionally and 25 pounds frequently. The claimant could stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. The claimant could push and pull as much as she can lift and carry. The claimant could frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. The claimant could understand, remember, and carry out instructions to perform simple and routine tasks.

D.E. 12 at 29. The ALJ further determined that Plaintiff was unable to perform her past relevant work as a fast-food cook. *Id* at 35.

Thus, the ALJ proceeded to step five of the analysis. At step five, the ALJ must determine if a claimant can adjust to other work given the claimant's residual functional capacity, age, education, and experience. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ must determine whether such jobs exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(1). The claimant is not disabled if the SSA establishes such jobs exist. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999). Here, the ALJ found Plaintiff could continue to work as a laundry laborer, lumber sorter, and box maker. D.E. 12 at 35-36. Each of these jobs were deemed to exist in significant numbers in the national economy. *Id.*

Plaintiff contests the ALJ's decision on two primary grounds. First, she contends the ALJ failed to appropriately consider carpal tunnel syndrome (CTS) and chronic shoulder pain (CSP) as impairments when developing the RFC. Second, Plaintiff argues her RFC lacked sufficient discussion of manipulative and postural limitations. The Court reviews these issues in turn.

## II. Standard of Review

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); see *also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently or if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

## III. Plaintiff's Medically Determinable Impairments

The second step of the evaluative analysis process requires the ALJ to consider the severity of the claimant's medically determinable physical impairment. 20 C.F.R. § 404.1520. To do so,

the ALJ must first establish that there are medically determinable impairments. *See* 20 C.F.R. § 404.1521. The impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* A "statement of symptoms, a diagnosis, or a medical opinion" is not evidence of an impairment. *Id.* Rather, objective medical evidence consists of "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513.

### i.  *Carpal Tunnel Syndrome Diagnosis*

Plaintiff first argues the ALJ erred by not discussing her Carpal Tunnel Syndrome (CTS) in the opinion, despite the condition's mention during the oral hearing and in four medical reports. D.E. 15 at 4-8. Plaintiff contends that while the ALJ did consider some CTS symptoms in the RFC, the ALJ erred in not acknowledging the diagnosis itself as an impairment that altered the RFC. *Id.* Whether CTS was a medically determinable impairment is a finding of fact, and as such review is governed by the substantial evidence standard.

Plaintiff's argument fails because she provided insufficient evidence in the record to establish CTS as a medically determinable impairment. As support for her claim, Plaintiff points to her oral hearing testimony, four mentions of "bilateral carpal tunnel syndrome" in her medical records, self-reported symptoms in her Adult Function Report, and self-reported symptoms from her consultative examinations. D.E. 15 at 4-6. None of this, though, was the result of medically acceptable clinical and laboratory diagnostic techniques. In the oral hearing, the ALJ questioned Plaintiff about CTS and other potential evidence. Plaintiff explained that she had never been tested or treated for the condition. D.E. 12 at 51 ("[ALJ] – . . . do you have any treatment for carpal tunnel syndrome? [PLTF] – No. [ALJ] – And who diagnosed you with that? [PLTF] – Let's see. My doctor in Indiana, because I had – she looked at my hands and she said I looked like I had

5

carpal – starts of the carpal tunnel. [ALJ] – Okay. Now, you didn't have any kind of nerve conduction studies? [PLTF] – No. They didn't do nothing. I mean, I'd go to the doctor and complain about something. They wouldn't even – they wouldn't do nothing.").

Plaintiff contends the ALJ completely ignored CTS, barring her ability to seek meaningful review. D.E. 15 at 7. However, the ALJ discussed how no evidence connected Plaintiff's CTS symptoms to an impairment. He wrote:

> "[i]n the present case, the record does not document any abnormal physical examination findings or reflect any observations indicating the claimant's pain symptoms . . . limited or precluded the claimant from performing fine and gross manipulative activities with the left upper extremity . . . . *See* Exhibits 2F/4 & 3F26, 32, 39, 44."

D.E. 12 at 24. The ALJ then stated "the medical evidence of record does not establish medically determinable impairments with regard to these allegations." *Id.* The opinion later noted Plaintiff "demonstrated good manual dexterity and performed fine manipulation and gross dexterous movements with each hand (Exhibit 2F/4)." *Id.* at 30. This was ample discussion of the symptoms raised by Plaintiff. Without concrete medical evidence, the ALJ did not err in excluding CTS as an impairment with arriving at the RFC. Substantial evidence supported the ALJ's conclusion.

Finally, Plaintiff suggests the ALJ should have ordered a consultative exam for more information on her CTS. Generally, the claimant has the burden of proof in the first four evaluative steps of a social security disability case. The claimant must develop a complete record, "detailed enough . . . to allow [the SSA] to determine the nature and severity of [their] impairment[s] for any period in question." 20 C.F.R. § 416.912(a)(2)(i). While the ALJ does have a duty to develop the record as necessary, ordering a consultative exam is within the ALJ's discretion. 20 C.F.R. § 416.912(b); 20 C.F.R. § 404.1519; *see Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); *Foster v. Halter*, 249 F.3d 348, 355 (6th Cir. 2001). Here, the ALJ was within

6

his discretion when he abstained from ordering a third consultative examination. Plaintiff provided no objective medical evidence in the record establishing CTS as a medically determinable impairment. There was no reason to think further evidence was necessary. Plaintiff's counsel did not request a consultative examination during the hearing. When the ALJ stated that he had not seen any evidence of CTS in the record, counsel did not object. D.E. 12 at 51. While objection during the hearing was not mandatory to preserve the issue on this appeal, the lack thereof further supported a finding that the record was complete. As such, the ALJ did not err by declining to order a consultative examination.

*ii.     Chronic Shoulder Pain*

Plaintiff next argues the ALJ erred by not discussing Chronic Shoulder Pain (CSP) as a medically determinable impairment. This is also a determination of fact governed on review by the substantial evidence standard.

Plaintiff claims there was medical evidence to establish CSP as a medically determinable impairment. She points to a 2021 report which stated she "has good passive range of motion of the left shoulder but cannot abduct [actively abduct] it more than about 90 or so." D.E. 12 at 365; D.E. 15 at 8. But, this was the only medical evidence of CSP in the record. A few months later, the same doctor reported Plaintiff "has good range of motion neck, back extremity joints with no [is] significant pain except some chronic left shoulder pain but she has good passive range of motion of it with minimal discomfort at this time." D.E. 12 at 378. During the consultative exam, APRN Patsy Jackson noted that "no joint redness, heat or swelling" was visible in any of Plaintiff's joints. *Id*. at 336. The report also stated x-ray imaging showed no shoulder problems. *Id.* at 337.

Plaintiff suggests her prescriptions for pain medications, along with a 2022 diagnosis of "bilateral shoulder pain," constituted medical evidence. D.E. 15 at 9. They did not. Self-reported

7

symptoms, diagnoses, and medical opinions are not medical evidence. 20 C.F.R. § 404.1521. Plaintiff can only point to the aforementioned 2021 report. Due to the volume of evidence supporting the contrary position, the ALJ's finding that CSP was not an impairment was supported by substantial evidence.

Plaintiff further disputes the physical consultative exam authorized in this case by noting the report did not include the x-ray image of Plaintiff's shoulder. The report summarized the results, but did not include the imaging. Plaintiff argues this left the report "incomplete," and, as such, the ALJ had the duty to contact the examiner to update the report to include the x-ray.

An ALJ is required to contact a medical source who performed an examination ""if the report is inadequate or complete. . ." 20 C.F.R. § 404.1519p. A consultative examination report must include "[t]he *results* of laboratory and other tests (*e.g.*, x-rays) performed according to the requirements stated in the Board's directions to the examining physician." 20 C.F.R. § 220.61(c)(4) (emphasis added). An ALJ is not a medical professional and cannot interpret raw medical data, such as an x-ray. As the ALJ had the results of the x-ray, the ALJ did not need to contact the examiner for the image. Also, as the Commissioner notes, Plaintiff's counsel never alerted the ALJ to the lack of the image, even stating during the oral hearing that he was unaware of any outstanding evidence in the case. D.E. 12 at 46; D.E. 17.

Plaintiff alleges her ability to fulfill her burden of proof was restricted because the results of the exam were not sent to her primary care physician. D.E. 15 at 10. An ALJ may disclose a claimant's consultative examination results to the claimant's primary care physician but is not required to do so. 20 C.F.R. § 416.919p(c). Since the disclosure is not mandatory, and it does not appear Plaintiff even requested the results, this point is meritless.

      *iii.*    *CTS and CPS in Combination*

8

Plaintiff argues that, even if CTS and CPS were not severe impairments, they would have been considered non-severe and would have, in combination, impacted Plaintiff's physical limitations beyond what was reflected in the RFC. D.E. 15 at 11. But, as established above, the ALJ appropriately determined that Plaintiff's CTS and CSP were not medically determinable impairments. The severity of the conditions was irrelevant, they did not need to be considered.

Nonetheless, the ALJ did specifically consider Plaintiff's complaints of CTS when developing the RFC. D.E. 12 at 31 ("However, the undersigned also considered the claimant's . . . statements that she has developed numbness and tingling sensation in her hands and feet in assessing her residual capacity."). The RFC's postural limitations (lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, occasionally climbing ladders, ropes, or scaffolds (D.E. 12 at 29)) also appear appropriate for shoulder pain. These limitations were more restrictive than those advised by the state agency consultants, who found Plaintiff had no postural limitations. *Id.* at 71-72, 78-79, 87.

### IV. Residual Functional Capacity Limitations

#### i. *Manipulative Limitations*

Plaintiff argues the ALJ erred in not including manipulative limitations in the RFC. But the opinion explained why the ALJ found manipulative limitations unnecessary. The ALJ stated "the claimant . . . demonstrated good manual dexterity, performed fine manipulation, and gross dexterous movements with each hand." D.E. 12 at 30. Based on this, the ALJ found "the objective evidence suggests the claimant's symptoms are not as limiting as alleged and undermine her allegations of work-related restrictions. Therefore, the residual functional capacity included a restriction to a range of work at the medium exertional level." *Id.* at 31.

9

The ALJ appropriately considered Plaintiff's manipulative abilities. There was substantial evidence supporting the ALJ's decision. While there were self-reported manipulative limitations throughout the record, they were sparse and unsubstantiated by objective findings. Meanwhile, objective medical evidence demonstrated Plaintiff had no limitations. D.E. 12 at 336 ("Able to perform hand grips with 5/5 strength rating bilaterally. Able to perform fine manipulation and gross dexterous movements with each hand and could oppose thumb to each finger bilaterally. Demonstrates good manual dexterity."). Thus, the ALJ did not err on this issue.

### ii.    Postural Limitations

Plaintiff finally claims that the lack of a "reaching" limitation in the RFC was a reversible error. She notes that during the oral hearing, the vocational expert determined that, if Plaintiff could not occasionally reach with her left upper extremity, she would be unable to perform medium exertional level jobs. D.E. 12 at 65; D.E. 15 at 12.

Plaintiff was found to be capable of "medium work," with additional limitations. "Medium work" is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 28 C.F.R. § 404.1567. "Light work," meanwhile, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* It further requires the claimant be capable of a "good deal" of walking or standing, and some "pushing and pulling of arm or leg controls." *Id.* No physical exertion category, however, enumerates "reaching" as a requirement.

The record in this case included little support for reaching limitations. Yet, there was substantial evidence justifying the ALJ's decision on Plaintiff's limitation. Plaintiff references the oral testimony of the vocational expert, but the vocational expert only spoke of a hypothetical wherein a claimant had such a limitation. D.E. 12 at 65. The vocational expert's testimony had

10

no bearing on Plaintiff's physical abilities. Otherwise, the "reaching" limitation is only brought up briefly in the hearing. D.E. 12 at 47 ("[Atty -] [b]ut she tells me that she has problems with reaching with arms); 57-58 ("[Atty] – Can you reach in front of you or out to the side without any problems? [PLTF] – For a little bit, maybe two or three minutes. I can't – my arms won't let me stretch out and do nothing"). The record as a whole hardly discussed Plaintiff's reaching ability. In the ALJ's rejection of the unlimited postural limitations suggested by the state agency consultants, he found "the objective findings set forth above and the claimant's testimony discussed herein supports including the additional postural and manipulative limitations, as provided in the above residual functional capacity." D.E. 12 at 33. The ALJ added stooping, kneeling, crouching, and crawling as postural limitations, but not reaching. D.E. 12 at 29.

Given there was substantial evidence supporting excluding reaching limitations in the RFC, the ALJ did not err on this issue.

## V. Conclusion

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's request for remand (D.E. 1) is **DENIED**

(2) **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 5th day of February, 2025.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge